IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHAUN MACAW,

    Plaintiff,

v.                                                 Civ. No. 03-00859 RLP/LFG

BYRON IRONMONGER, YSIDRO SALAZAR,
and NAVAJO REFINING COMPANY, L.P., a
Delaware Corporation.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the court on Defendants' Motion for Summary Judgment and Motion to Dismiss or, Alternatively, to Compel Arbitration ("Defendants' Motion") and Defendant [Navajo Refining Co.]'s Motion to Join International Union of Operating Engineers, Local No. 351 as a Party Defendant (the "Company's Motion"). After a summary of the relevant facts, each Motion will be discussed in turn.

Plaintiff Shaun Macaw ("Macaw") brought this action alleging violations of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§ 2000e, the New Mexico Human Rights Act, N.M.S.A. §§ 28-1-1 *et seq.* ("NMHRA"), negligent retention, assault and battery, and intentional infliction of emotional distress. The assault and battery claim is asserted solely against Ysidro Salazar, a co-employee who sometimes worked in a supervisory capacity; the negligent retention claim is solely against, Navajo Refining Company; and all other causes of action are against the Company, Salazar, and Byron Ironmonger, a supervisor with the Company.

Macaw alleges in her Complaint that from "June of 2001 and continuing until her constructive discharge in May of 2002, Macaw was subjected to a barrage of sexual

harassment, including lewd and offensive language, inappropriate touching and postings of lewd and offensive photos." Complaint, ¶ 5. Macaw states she informed the Company on more than one occasion that she was subjected to a sexually hostile work environment. *Id.* at ¶ 6. Salazar, she claims, approached her from behind and licked Macaw from her collarbone to her ear. *Id.* at ¶ 9.

Macaw also alleges that she was treated differently from other employees, received testing and discipline not meted out to others, and was retaliated against for both her complaints of sexual harassment and some unidentified workers' compensation claims. *Id.* at ¶¶ 12-13. She alleges she was constructively discharged on May 6, 2002. *Id.* at ¶ 14. She filed claims with the New Mexico Human Rights Department and the Equal Employment Opportunity Commission and received Notice of Right to Sue letters from each agency in April and May, 2003. Her Complaint was filed July 22, 2003.

During her tenure with the Company, Macaw was a member of the International Union of Operating Engineers, Local No. 351 (the "Union"). The Union was the exclusive bargaining agent for her employee unit at the Company, and her employment was governed by a Collective Bargaining Agreement (the "CBA"). The CBA contains, *inter alia*, grievance and arbitration procedures.

A. *Defendants' Motion for Summary Judgment and Motion to Dismiss or Compel Arbitration*

Because Macaw failed to follow the grievance procedures in the CBA, Defendants argue that all of her claims are barred. Alternatively, Defendants argue that Macaw's claims are subject to mandatory arbitration as provided in the CBA. They seek dismissal

pursuant to Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 56, for summary judgment, for her failure to exhaust. Defendants also contend that some or all of Macaw's state law claims are barred by the CBA or the New Mexico Worker's Compensation Act.

Title VII provides relief independent of the remedial schemes outlined in the CBA. *Alexander v. Gardner-Denver*, 415 U.S. 36, 48-49 (1974). In *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998) the Court noted that the *Alexander* case still stood for the proposition that Title VII claims address issues different from those in CBAs: Title VII addresses independent statutory rights and CBAs address individual contractual rights. *Id.* at 76. Statutory rights, said the Court, are "distinct from any right conferred by the collective-bargaining agreement." *Id.* at 79. Moreover, not only is a claimant's "statutory claim not subject to a presumption of arbitrability; we think any CBA requirement to arbitrate it must be particularly clear. . . . More succinctly, the waiver must be clear and unmistakable." *Id.* at 79-80. Thus, the Court concluded, "*Gardner-Denver* at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." *Id.* at 80.

In this case, the CBA does not specifically include or refer to Title VII. *See* Exhibit 2, Art. X. Based on the foregoing authority, Defendants' arguments that Macaw's claims are barred by her failure to follow the grievance procedure in the CBA and that her claims must be sent to mandatory arbitration are without merit. This applies equally to Title VII and her claims under the New Mexico Human Rights Act.

Defendants' argue that Macaw's state law claims of sex discrimination, retaliation, negligent retention, assault and battery, and intentional infliction of emotional distress are

3

barred either by the New Mexico's Worker's Compensation Act (the "WCA") or the CBA. The WCA "was enacted as a response to the ever-increasing number of industrial injuries and the insufficient remedies available to injured workers." *Sabella v. Manor Care, Inc.*, 915 P.2d 901, 905 (N.M. 1996). Thus, the court held, when a claim is made under the New Mexico Human Rights Act for sex discrimination that cause of action cannot be barred by the WCA if the injuries are outside of those contemplated by the WCA. *Id.* Three years later, in *Coates v. Wal-Mart Stores, Inc.*, 976 P.2d 999 (N.M. 1999), the New Mexico Supreme Court held that "[i]njuries caused by sexual harassment do not arise out of employment." *Id.* at 1004. Thus, the WCA's exclusivity's provision, NMSA (1978) § 52-1-9 is not applicable to claims of sexual assault and battery, *id.*, negligent retention or supervision, *id.*, and intentional infliction of emotional distress, *id.* at 1006.

Finally, Defendants argue that the CBA covers each of her state law tort claims and thus preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) because she failed to exhaust the grievance and arbitration procedures in the CBA. In support of their arguments, Defendants point the court to several provisions in the CBA to indicate that Macaw's claims are covered by that contract. In assessing whether a claim is preempted, the issue is not whether a plaintiff's claims are covered by the CBA: the issue is whether resolution of those claims involve an interpretation of the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409 (1988). Even if the state law claim and the CBA would require "'addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes.'" *Garley v. Sandia Corp.*,

4

236 F.3d 1200, 1209 (10th Cir. 2001) (quoting *id*. at 409-410).  With these precepts in mind, the court addresses Macaw's state law tort claims.

Macaw's Complaint alleges intentional infliction of emotional distress ("IIED") against each Defendant: Ironmonger for lewd propositions and suggestions (Complaint, ¶¶ 7 & 47) and Salazar for licking her from her collarbone to her ear and lewd propositions and suggestions (*id*. at ¶¶ 7, 9 & 47).  Macaw's Memorandum in Response [Doc. 25] alleges that Defendants attached to her locker condoms filled with a liquid resembling sperm.  Memorandum at 15. Macaw claims the Company ignored her reported claims of sexual harassment and hostile work environment against various co-workers, including Salazar and Ironmonger (Complaint at ¶¶ 8, 10. 11 & 48).   In her Memorandum, she alleges that her claims against the Company for disparate treatment, retaliation, and reduction in pay (Complaint, ¶¶ 12-13) also caused her severe emotional distress. Memorandum at 15.

Defendants argue that Macaw's claims are inextricably tied to the CBA because the conduct complained of is addressed in that contract and therefore, they reason, these claims cannot be resolved without interpreting the CBA.

As against the individual Defendants, Macaw's claims of IIED are not preempted. The tort is recognized in New Mexico and requires extreme and outrageous conduct resulting in severe emotional distress, meaning that a reasonable person "would be unable to cope adequately with the mental distress engendered by the circumstances." *Silverman v. Progressive Broadcasting, Inc.*, 964 P.2d 61, 70-71 (quoting *Jaynes v. Strong-Thorne Mortuary, Inc.*, 954 P.2d 45 (1998)).  This cause of action against these two individuals

can be resolved without reference to or interpretation of the CBA.

As against the Company, the critical inquiry is whether the Company has duties and responsibilities toward Macaw independent of the CBA.  *See, e.g.*, *Steinbach v. Dillon Companies, Inc.*, 253 F.3d 538, 541-42 (10th Cir. 2001).  "An employer may be liable for the intentional infliction of emotional distress."  *Deflon v. Danka Corp., Inc.*, 1 Fed.Appx. 807, 820 (10th Cir. 2001) (unpublished opinion) (citing *Coates v. Wal-Mart Stores*, 976 P.2d 999 (N.M. 1999)).

In this case, Macaw's claims of IIED against the corporation involve issues that would have been contracted for in the CBA: discipline, wages, workplace harassment, testing, etc.  As stated by the Tenth Circuit Court of Appeals, when the contract determines whether the management's conduct was outrageous, given the employee's rights and the employer's obligations, the claim is preempted.  *Id.* at 542 (citing *Garley v. Sandia Corp.*, 236 F.3d 1200 (10th Cir. 2001)).   The allegations presented do not support a theory of liability against the Company separate from the CBA.

The foregoing discussion shows that Macaw's claims of assault and battery and negligent retention do not depend upon reference to or interpretation of the CBA and therefore are not preempted.  Assault is the apprehension of an immediate battery and must involve fear.  *Baca v. Velez*, 833 P.2d 1194, 1196 (N.M. Ct. App.), *cert. denied*, 835 P.2d 80 (1992).  Battery is an unconsented to touching.  *Id.*  Neither of these causes of action requires examination of the CBA for resolution.

"An . . . entity may be held liable in tort for . . . negligent retention of an employee even though it is not responsible for the wrongful act of the employee under the doctrine

of respondeat superior." *Los Ranchitos v. Tierra Grande, Inc.*, 861 P.2d 263, 269 (N.M. Ct. App. 1993). A corporation's liability is "premised upon 'the knew or should have known standard.'" *Deflon*, 1 Fed.Appx. at 819 (quoting *F & T Co. v. Woods*, 594 P.2d 745, 747 (1979)). The CBA could not determine these factual matters.

B.   *Defendant's Motion to Join International Union of Operating Engineers, Local No. 351 as a Party Defendant.*

This Motion is premised upon the Union's being a necessary party because it must interpret the CBA for the court and its interests may be affected by any resolution against the Company; *i.e.*, to avoid finding liability against the Company on grounds that are inconsistent with its obligations under the CBA. Given the court's finding in Section A, this Motion is denied as moot.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment and Motion to Dismiss or, Alternatively, to Compel Arbitration [Doc. 15] is granted as to Plaintiff's claim of intentional infliction of emotional distress against Defendant Navajo Refining Co., L.P. and is denied in all other respects;

IT IS FURTHER ORDERED that Defendant Navajo Refining Co.'s Motion to Join International Union of Operating Engineers, Local No. 351 as a Party Defendant [Doc. 13] is denied as moot.

IT IS SO ORDERED.

_____
Richard L. Puglisi, United States Magistrate Judge
(sitting by designation)

For the Plaintiff:       Roxanne R. Lara, Esq.
For the Defendants:   Richard E. Olson, Esq. and Joel M. Carson, Esq.