# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SHAUN MACAW,

      **Plaintiff,**

v.                                    **No. CIV 03-859 RLP/LFG**

BYRON IRONMONGER, YSIDRO SALAZAR,
and NAVAJO REFINING COMPANY, L. P.,
a Delaware Corporation,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Defendant Byron Ironmonger's ("Ironmonger's") Motion for Summary Judgment, filed July 7, 2004 [Doc. No. 59], and Defendant Ysidro Salazar's ("Salazar's") Motion for Partial Summary Judgment, filed July 7, 2004 [Doc. No. 58]. Both motions[1] are fully briefed and ready for resolution. After careful consideration of the law, pleadings, and attachments, the Court concludes that Ironmonger's Motion for Summary Judgment should be granted in part and denied in part, and that Salazar's Motion for Summary Judgment should be granted. The Court's reasoning follows.

---

[1]Defendant Navajo Refining Company filed a separate Motion for Partial Summary Judgment that will be decided in a separate Memorandum Opinion and Order.

**Background**

On July 22, 2003, Plaintiff Shaun Macaw ("Macaw") brought this Complaint for Damages against Defendants.  She seeks an award of punitive damages along with monetary damages against Defendants for alleged emotional distress.  Macaw is a woman who worked at Defendant Navajo Refining Company's ("Navajo") oil refinery in Artesia, New Mexico.  [Complaint, ¶ d.]  Macaw began working for Navajo in about April 1995 and claims that in June 2001, and continuing until her alleged constructive discharge in May 2002, she was subjected to sexual harassment or a hostile work environment.  Macaw alleges violations of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§ 2000e and the New Mexico Human Rights Act, NMSA §§ 28-1-1 *et seq.* ("NMHRA"), negligent retention, assault and battery, intentional infliction of emotional distress and retaliation.  Macaw asserts the Title VII and NMHRA claims of sexual harassment and hostile work environment and the claim of intentional infliction of emotional distress[2] against all three defendants.  The negligent retention and retaliation[3] claims are asserted against only Navajo, and the assault and battery claim is asserted against only Salazar.

---

[2]In a prior decision by the Court, entered March 24, 2004, the Court granted in part Defendant Navajo's motion for summary judgment and motion to dismiss or alternatively request to compel arbitration but only as to the intentional infliction of emotional distress claim as asserted against the corporate entity.  Thus, that claim has already been resolved and will not be discussed further.  [Doc. No. 46.]

[3]Both Ironmonger and Salazar present arguments in their motions for summary judgment that the retaliation claims should be dismissed against them for various reasons.  However, Plaintiff's responses to the motions do not discuss the retaliation claim.  Indeed, the Complaint clearly asserts the retaliation claim against only Navajo.  [Complaint, Count VI.]  The Court concludes that no retaliation claim was asserted against either Ironmonger or Salazar and, accordingly, that claim need not be resolved with respect to the individual defendants.

## **Defendant Ironmonger's Motion for Summary Judgment**

Ironmonger requests summary judgment as to all claims asserted against him.  He claims first that Title VII claims do not apply to individuals and further, that Macaw failed to exhaust her administrative remedies against him by failing to name him as a respondent in her EEOC charge. Ironmonger argues that the NMHRA claims also must be dismissed against him because Macaw failed to file her complaint in federal court in a timely fashion as required by the NMHRA and again because she did not name Ironmonger in the Human Rights Division charge.  Alternatively, Ironmonger claims he is entitled to summary judgment on the Title VII and NMHRA claims because it is undisputed that Macaw did not find the conduct of which she complained to be unwelcome or based upon her sex, and also because she did not avail herself of policies and procedures promulgated by Navajo to prevent sexual harassment in the work place.[4]

In addition Ironmonger asserts that the retaliation claim against him is barred because her filing with the Human Rights Division was untimely.  Ironmonger also claims that the retaliation claims fail because Macaw fails to meet a prima facie showing of retaliation and moreover, even if she could, that Navajo's justifications for its actions were not pretextual.

Finally, Ironmonger requests summary judgment on the intentional infliction of emotional distress claim because his conduct was not extreme and outrageous and Macaw cannot prove she suffered any emotional distress as a result of Ironmonger's alleged conduct.

---

[4]The Court need not reach the arguments presented by Defendants as to whether the alleged harassment at work was based on sex and/or unwelcome because the Court decides these motions on other grounds presented by Defendants.

**Defendant Salazar's Motion for Partial Summary Judgment**

Defendant Salazar makes identical arguments as to why all of the above claims that were asserted against Ironmonger should also be dismissed against him. The only claim for which Salazar does not request summary judgment is the assault and battery claim, and that claim will remain for resolution by the fact finder at trial.

**Summary Judgment Standard**

Summary judgment is not a "disfavored procedural shortcut." Rather, it is an important procedure designed to "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 325.

The factual record along with any reasonable inferences that may be drawn therefrom must be examined in the light most favorable to the party opposing summary judgment. Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir.), cert. denied, 537 U.S. 816 (2002). Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).  The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment.  Fed. R. Civ. P. 56(e);  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  Mitchell v. City of Moore, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (internal citation omitted).

## Analysis

## I.   TITLE VII LIABILITY OF INDIVIDUAL SUPERVISORS

Macaw alleges that both Ironmonger and Salazar acted in supervisory roles at least some of the time.  [Complaint, ¶¶ 3, 4; Plaintiff's Responses to both Motions for Summary Judgment.]  Navajo has disputed whether either Ironmonger or Salazar acted in supervisory capacities.  [Defendants' briefs in support of Motions for Summary Judgment.]   Notwithstanding what appear to be disputed issues of fact as to the employment roles of Ironmonger and Salazar, the Tenth Circuit Court of Appeals has determined that Title VII suits against individuals must proceed in their official capacity; "individual capacity suits are inappropriate."  Haynes v. Williams, 88 F.3d 898, 899 (10th Cir. 1996).  This is true because "[t]he relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act."  Id. (emphasis in original.)  Even if the individual defendants were acting in supervisory positions or as alter egos of the employers, if unlawful conduct occurred the employer would be liable for the unlawful employment practices of the individuals. Id. at 900.  The Tenth Circuit further explained that "[w]e agree with the majority view that, taken as a whole, the language and structure of amended Title VII

5

continue to reflect the legislative judgment that statutory liability is appropriately borne by employers, not individual supervisors." Id. at 899, 901.

Indeed, in Macaw's response, she makes no argument that Title VII would permit an individual liability claim against Ironmonger or Salazar.[5]  Because the law in the Tenth Circuit is clear with respect to individual liability under Title VII, and because Plaintiff presents no argument to the contrary, the Court will grant Ironmonger's and Salazar's Motions for Summary Judgment as to the Title VII sexual harassment/hostile work environment claims as asserted against them individually.

Ironmonger and Salazar also argue that the Title VII claims must be dismissed against them because Macaw did not exhaust her administrative remedies when she failed to name Ironmonger and Salazar as respondents in her EEOC charge.  In Macaw's EEOC charges, she named only Navajo as a respondent.  [Exhibits 2 and 3 to Loyd Aff., attached to Navajo's brief in support of Motion for Summary Judgment.]  In the bodies of the EEOC charges, Macaw did not identify either Ironmonger or Salazar, and it is not clear from her allegations whether she is alluding to either of them in the charges.  Macaw did not present any separate affidavits in support of her EEOC charges that identified Ironmonger or Salazar, and no party has discussed any investigation conducted by the EEOC that might have included interviews with these individual defendants.

Exhaustion of administrative remedies, *e.g.*, filing a timely charge of discrimination with the EEOC, is a jurisdictional prerequisite to bringing a Title VII lawsuit.  Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir.), *cert. denied*, 522 U.S. 935 (1997); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996), *cert. denied*, 520 U.S. 1115 (1997); 42 U.S.C. § 2000e-5(e) and (f)(1).

---

[5]Plaintiff states that as to the responses to these Motions for Summary Judgment, she incorporates all arguments that were set out in her response to Navajo's Motion for Summary Judgment.  Even in that response, the Court does not locate any argument by Macaw that Title VII permits supervisory or individual liability claims.

"The purposes of the exhaustion requirement are to provide notice of the alleged violation to the charged party, and to provide the EEOC with the opportunity to conciliate the claim." Ortiz v. Wingard, 173 F. Supp. 2d 1155, 1160 (D.N.M. 2001).

Omission of a party's name from an EEOC charge does not mean that a subsequent action brought under Title VII must be automatically dismissed. Id. In making this exhaustion determination, the Court must liberally construe the EEOC charge.[6] Id. However, the general rule is that "only parties previously identified as respondents in charges filed with the EEOC are subject to subsequent liability under Title VII." Id. (internal citation omitted). A narrow exception to the rule exists where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of providing notice to the respondent and permitting the EEOC to attempt conciliation. Id.

The Tenth Circuit has articulated four factors to examine in deciding whether the failure to name a party in the EEOC charge will result in dismissal of a subsequent claim:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Id. (citing Romero v. Union Pac. R.R., 615 F.2d 1303, 1311-12 (10th Cir. 1980)).

---

[6]Here, however, Defendants argue that Macaw was not proceeding *pro se* when she filed her EEOC charges and that she was acting with the advice of counsel. Thus, according to Defendants, these EEOC charges are not entitled to a liberal interpretation.

Clearly Macaw knew the names of Ironmonger and Salazar when she filed her EEOC charges; however, she simply failed to identify them in the charges. The evidence is insufficient to demonstrate that the interests of Ironmonger and Salazar are so similar to Navajo that it would be unnecessary to name them. Although it is disputed as to what level of supervisors they might have been from time to time, there is no evidence that they were high level managers of the company.[7] Finally, there is no evidence presented that Ironmonger or Salazar represented to Macaw that their relationship with the complainant was to be through Navajo. Under these circumstances, the Court concludes that Macaw's failure to name Ironmonger and Salazar in her EEOC charges serves as an alternative basis to dismiss the Title VII charges against them.

## II.   HUMAN RIGHTS ACT CHARGES AGAINST IRONMONGER AND SALAZAR

Ironmonger and Salazar again argue that the Human Rights Act claims must be dismissed against them because Macaw failed to name them as respondents in her HRD charges.[8] The Court agrees. "[I]ndividual defendants cannot be sued in district court under the [NMHRA] unless and until the complainant exhausts her administrative remedies against them." Mitchell-Carr v. McLendon, 127 N.M. 282, 286 (1999) (quoting Luboyeski v. Hill, 117 N.M. 380, 382 (1994)). In Sonntag v. Shaw, the New Mexico Supreme Court determined that the trial court erred in allowing the plaintiff's NMHRA discrimination claim to proceed when the individual defendant had not been named in the underlying administrative proceeding. Because of this failure to name the individual respondent, the

---

[7]It was undisputed that Ironmonger and Salazar did not have the power or authority to hire, fire, promote or demote.

[8]The argument that there can be no individual liability under the NMHRA is not available to Defendants. See Sonntag v. Shaw, 130 N.M. 238, 243 (2001).

plaintiff had not exhausted her administrative remedies against that defendant.  130 N.M. 238, 243.

In <u>Luboyeski</u>, the New Mexico Supreme Court affirmed the dismissal of the individual defendants because they were not named as respondents in the administrative proceeding.  Similarly, in <u>Mitchell-Carr</u>, the New Mexico Supreme Court concluded that the trial court properly granted summary judgment to the defendants because the complainant failed to name McLendon as an individual respondent in the EEOC complaints they filed.  127 N.M. at 284.  *See also* <u>Tafoya v. Bobroff</u>, 865 F. Supp. 742, 747-48 (D.N.M. 1994) (relying on <u>Luboyeski</u> and dismissing the plaintiff's NMHRA claim), *aff'd,* 74 F.3d 1250 (10th Cir. 1996).

On this basis alone, the Court concludes that all claims brought under the NMHRA against Ironmonger and Salazar should be dismissed.  Alternatively, the claims should be dismissed because Macaw did not timely file the NMHRA claims against the individual defendants after receipt of her order of non-determination from the New Mexico Human Rights Division.  It is undisputed that Macaw filed her administrative charge alleging a hostile work environment with the EEOC on April 20, 2002.  She alleged violations under both Title VII and the NMHRA.  On April 28, 2003, the New Mexico Human Rights Division issued an order of non-determination relating to the hostile work environment charge.  [Ex. 5 to Loyd Affidavit, attached to Navajo's brief in support of Motion for Summary Judgment.]  The Order advised Macaw that she could appeal the determination within 30 days from the date of service of the Order.  Macaw filed her lawsuit on July 22, 2003, well after the 30-day deadline to file an appeal.  NMSA § 28-1-13(A).  Moreover, the fact that Macaw received a notice of right to sue from the EEOC that provided a different deadline in which to file a court

9

complaint did not affect the 30-day time limit for filing an appeal from an order of the New Mexico

Human Rights Division.  Mitchell-Carr, 127 N.M. at 287-88.

Thus, for either or both of these reasons, the Court concludes that the NMHRA claims

asserted against Ironmonger and Salazar should be dismissed.

## III.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AS ASSERTED AGAINST BOTH DEFENDANTS

With respect to an intentional infliction of emotional distress claim, New Mexico courts have

adopted the approach used in the Restatement (Second) of Torts § 46 (1965).  Trujillo v. Northern

Rio Arriba Electric Cooperative, 131 N.M. 607, 616 (2001).  In order to succeed with an intentional

infliction of emotional distress claim, the plaintiff must prove the following elements:

> (1) the conduct in question was extreme and outrageous; (2) the
> conduct of the defendant was intentional or in reckless disregard of
> the plaintiff; (3) the plaintiff's mental distress was extreme and severe;
> and (4) there is a causal connection between the defendant's conduct
> and the claimant's mental distress.

Id. (quoting Hakkila v. Hakkila 112 N.M. 172, 182 (Ct. App.), cert. denied, 112 N.M. 77 (1991)).

The Restatement explains that extreme and outrageous conduct is that which is "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized society."  In other words, such conduct

is atrocious and intolerable to the ordinary person.

In examining claims of intentional infliction of emotional distress, the court determines

whether the conduct at issue "reasonably may be regarded as so extreme and outrageous that it will

permit recovery . . . ."  Id. at 617 (citing Padwa v. Hadley, 127 N.M. 416 (Ct. App.), cert. denied,

127 N.M. 389 (1999)).  If reasonable persons could differ on that question, the matter should proceed to the jury.  Id.

The plaintiff also must present evidence that she suffered *severe* emotional distress.  Id. (*citing* U.S.A. Oil, Inc. v. Smith, 415 So.2d 1098, 1101 (Ala. Civ. App., *writ denied*, 415 So.2d 1102 (Ala. 1982)) ("[I]n order to prevent the tort of outrage from becoming a panacea for all of life's ills, recovery must be limited to distress that is severe.")  "Severe emotional distress means that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.'"  Trujillo, 131 N.M. at 617 (internal quotations omitted).

### A.    *Allegations Against Ironmonger*

Here, Macaw brings a claim of intentional infliction of emotional distress against both Ironmonger and Salazar.  To support the claim against Ironmonger, Macaw alleges that Ironmonger, in a conversation with co-worker Dennis Knowlton, asked Knowlton if he would kill Macaw for $50,000.[9]  Knowlton taped the conversation with Ironmonger and then gave the tape to Chava Florez, who passed on the tape to Macaw.  After hearing the tape, Macaw did not contact the police immediately.  She conferred with her attorney who reviewed the tape and then Macaw contacted the police. Authorities declined prosecution.  While these facts appear undisputed by Ironmonger, he claims the statement was a joke.  Macaw asserts that after the death threat she suffered from panic attacks, a fast heartbeat, and fatigue.  Macaw was diagnosed with depression and prescribed anti-depressants more than a year after her job terminated with Navajo.  [Macaw Dep. at 275.]  Shortly after she learned of the death threat, Macaw suffered several panic attacks relating to incidents that

---

[9]The dates of the death threat is not provided, nor are the dates supplied as to when the tape recording was circulated.

she perceived to be possibly threatening. [Macaw Dep. at 270-72.] On one occasion, she feared that when workers were moving scaffolding at work and some materials fell from overhead, she thought the materials might have been aimed at her. As a result of this incident, she wet her pants. [Macaw Dep. at 272.]

In this instance, the Court concludes that Macaw has raised a an issue of material fact as to all of the elements of the intentional infliction of emotional distress claim. A death threat and offer of money, that is recorded and heard by several third-parties as well as by the plaintiff (at some point), does not merely ring of prankster behavior. Indeed, a death threat accompanied with an offer of payment is not just boorish or rude conduct. At least one court has stated that "[a]ll death threats are heinous and would support a finding of intentional infliction of emotional distress." Littlefield v. McGuffey, 954 F.2d 1337, 1348 (7th Cir. 1992). *See also* Cavil v. Illinois Tool Works, Inc., 2003 WL 22848952 at *8 (W.D. Tex.) (termination of an employee for a physical confrontation with another worker does not support claim of intentional infliction of emotional distress, but bomb and death threats are outrageous conduct that may give rise to a cause of action of intentional infliction of emotional distress), *aff'd*, 2003 WL 22426868 (5th Cir. Oct. 23, 2003).

Thus, the Court concludes that at a minimum, Plaintiff has raised material issues of fact for a jury to decide as to whether the death treat was truly extreme and outrageous, whether Ironmonger intended his conduct to inflict severe emotional distress, whether the death threat caused Macaw severe emotional distress, and whether there is a causal connection between the threat and the alleged serious emotional distress. The Court, therefore, will deny Ironmonger's request for summary judgment on the intentional infliction claim and will allow it to proceed to trial.

B.    *Allegations Against Salazar*

The Court reaches the opposite conclusion with respect to Macaw's claim of intentional infliction of emotional distress against Salazar. As best as can be determined by the Court, Macaw's sole allegations to support this claim against Salazar are that he licked Macaw's neck on one occasion. While this type of conduct is not desirable in the work place, it is more akin to distasteful or boorish conduct, rather than outrageous conduct that goes beyond all possible bounds of decency. The Court agrees with Salazar that such conduct rises only to the level of "mere insults, indignities, threats, petty oppressions or other trivialities" which are not enough to raise a genuine issue of material fact that the conduct was extreme and outrageous. In addition, Macaw simply fails to present evidence that she suffered severe emotional distress as a result of this incident. Thus, the Court will grant Salazar's request for summary judgment on the intentional infliction of emotional distress claim and it will be dismissed.

## Conclusion

For all of the above-stated reasons, Defendant Ironmonger's Motion for Summary Judgment will be granted in part and denied in part, with the result that Macaw's intentional infliction of emotional distress claim against Ironmonger will proceed to trial. Defendant Salazar's Motion for Partial Summary Judgment will be granted in its entirety. However, the assault and battery claim against Salazar will proceed to trial.

IT IS THEREFORE ORDERED that:

(1) Defendant Byron Ironmonger's Motion for Summary Judgment [Doc. No. 59] is GRANTED with respect to the Title VII and New Mexico Human Rights Act claims (Counts I and

II) which are dismissed with prejudice.  The motion is DENIED with respect to the intentional infliction of emotional distress claim (Count V) against Ironmonger which will proceed to trial;

(2) Defendant Ysidro Salazar's Motion for Partial Summary Judgment [Doc. No. 58] is GRANTED in its entirety with the result that the Title VII, NMHRA and intentional infliction of emotional distress claims (Counts I, II, and V) are dismissed with prejudice.  Because Ysidro did not move for summary judgment on the assault and battery claim (Count IV), that claim will proceed to trial.


_____
Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)

14