## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SHAUN MACAW,**

    **Plaintiff,**

**v.**                                          **No. CIV 03-859 RLP/LFG**

**BYRON IRONMONGER, YSIDRO SALAZAR,**
**and NAVAJO REFINING COMPANY, L. P.,**
**a Delaware Corporation,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Defendant Navajo Refining Company, L.P.'s ("Navajo's") Motion for Partial Summary Judgment,[1] filed July 7, 2004. [Doc. No. 60.] The Motion is fully briefed and ready for resolution. After careful consideration of the pertinent law, pleadings and attachments, the Court concludes that Navajo's request for partial summary judgment should be granted in part and denied in part. The Court's reasoning follows.

### Background

On July 22, 2003, Plaintiff Shaun Macaw ("Macaw") brought this Complaint for Damages against Navajo and two individual defendants. She seeks an award of punitive damages along with

---

[1]Individual Defendants Ironmonger and Salazar also filed motions for summary judgment, and the Court resolved those motions in a separate Memorandum Opinion and Order. As set forth in that decision, several claims against the individual defendants are proceeding to trial.

monetary damages for alleged emotional distress.  Macaw is a woman who worked at Navajo's oil refinery in Artesia, New Mexico.  [Complaint, ¶ d.]  Macaw began working for Navajo in about April 1995 and claims that in June 2001, and continuing until her alleged constructive discharge[2] in May 2002, she was subjected to sexual harassment or a hostile work environment.  Macaw alleges violations of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§ 2000e and the New Mexico Human Rights Act, NMSA §§ 28-1-1 *et seq.* ("NMHRA"), negligent retention, assault and battery, intentional infliction of emotional distress and retaliation.  Macaw asserts the Title VII and NMHRA claims of hostile work environment/sexual harassment, negligent retention, and retaliation against Navajo.[3]

## Navajo's Motion for Partial Summary Judgment

Navajo argues that it is entitled to summary judgment on the Title VII and NMHRA hostile work environment/sexual harassment claims because Macaw cannot establish that the conduct of which she complains was "unwelcome" or that such conduct was based on sex.  Even if Macaw could satisfy the *prima facie* elements of her claim, Navajo maintains it has an affirmative defense to liability.  Navajo also asserts that the NMHRA hostile work environment claim should be dismissed because Macaw did not timely file her lawsuit in district court after receiving her notice of non-determination.  In addition, Navajo contends that the Title VII and NMHRA retaliation claims must be dismissed because Macaw cannot establish a *prima facie* case of retaliation or that Navajo's articulated legitimate business reasons for any actions it took were pretextual.  Finally, Navajo

---

[2]Macaw did not set out a separate claim for constructive discharge in her Complaint, and the parties did not brief this possible claim.

[3]Macaw also brought the intentional infliction of emotional distress claim against Navajo, but in an earlier opinion, the court dismissed this claim as asserted against Navajo.

requests summary judgment on the NMHRA retaliation claim because Macaw did not timely file a charge with the New Mexico Human Rights Division ("NMHRD") and she failed to exhaust her administrative remedies by filing this action before receipt of an order of non-determination on the second retaliation charge.  Navajo did not move for summary judgment on the negligent retention claim (Count III), which will proceed to trial.

## Summary Judgment Standard

Summary judgment is not a "disfavored procedural shortcut."  Rather, it is an important procedure designed to "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995).  The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 325.

The factual record along with any reasonable inferences that may be drawn therefrom must be examined in the light most favorable to the party opposing summary judgment.  Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir.), *cert. denied,* 537 U.S. 816 (2002).  Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Mitchell v. City of Moore, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (internal citation omitted).

## Analysis

## I.   TITLE VII HOSTILE WORK ENVIRONMENT/SEXUAL HARASSMENT CLAIM

### A.   *Material Facts Regarding Hostile Work Environment/Sexual Harassment Claim*

The parties present both disputed and undisputed facts regarding this claim. In some instances, Macaw attempts to dispute facts set forth by Navajo but fails to do so with the required references to record evidence. D.N.M. LR-Civ 56.1(b) (opposition to motion for summary judgment must refer with particularity to those portions of the record upon which the opposing party relies when setting forth facts in dispute).

During Macaw's employment, Navajo maintained a sexual harassment policy that it claims was posted and mailed to employees at home. Macaw does not recall seeing the policy posted or receiving a copy in the mail. Navajo distributed a sexual harassment handbook that Macaw received. Navajo presented a video presentation on sexual harassment but Macaw does not recall seeing it. Macaw understood that she could complain of alleged sexual harassment to a higher level of management but she understood her prior complaints to supervisors were unsuccessful. Macaw never

4

complained of alleged sexual harassment to the Refinery Manager or Refinery President, but she claims she did complain to the Plant Manager and to several supervisors.

Macaw admits that she discussed her sex life with co-workers while at work but asserts that she did not engage in such conversations frequently.  According to Navajo's material facts, Macaw engaged in sexually explicit discussions at work.  Macaw disputes this material fact (no. 11) but does not provide record evidence to contest the fact.   D.N.M. LR-Civ 56.1(b).

It is undisputed that Macaw used the following terms with co-workers at work: fuck, shit, dick, and motherfucker and that her co-workers used similar language.  Macaw contends that she did not use these words often and concedes that she did not report to managers or supervisors that this type of language offended her since she used the same language.  [Plaintiff's Material Fact 9; Defendant's Material Fact 13.]

Macaw admits she told a co-worker that when her husband did laundry on weekends she rewarded him with a "Sunday Morning Special," which she explained was oral sex.  [Defendant's Material Facts 15, 16; Plaintiff's Material Fact 11.]

Macaw disputes Navajo's allegations that she told her co-workers that she had a engaged in sexual activity with a man who was "so large" that she was afraid to have sexual relations with him, that she was lucky to have a husband who was so "well endowed," that she was going to put her husband on some type of medication because she was "tired of masturbating," and that on one occasion she told co-workers that she was not wearing clothing under her work coveralls.  It also is disputed whether Macaw bent over to a co-worker exposing her breasts to him.  [Defendant's Material Facts 17, 18, 19, 20; Plaintiff's Material Fact 12.]

It is undisputed that Macaw had a conversation with a co-worker in reference to getting a tattoo and about "getting a mohawk" which she said was "what it's called" when "you shave down there." [Macaw Dep. at 184-85.] It also is uncontested by Macaw that she told a co-worker that she wanted to have a "lawnmower man" tattoo drawn above her "pussy." [Defendant's Material Fact 22; Plaintiff's Material Fact 14]. Macaw admits that she told a co-worker that she used to have a tattoo of a mouse in that area, but her "pussy ate it." However, Macaw contends that she was just repeating a joke made by a comedian on HBO. [Plaintiff's Material Fact 14.]

Macaw attempts to dispute that she would laugh at male co-workers when her sexually explicit stories or statements embarrassed them, but she disputes the material fact presented by Navajo only by quibbling with the definitions of words. This is insufficient to create a factual dispute. [Defendant's Material Fact 24; Plaintiff's Material Fact 15.] In other words, Macaw must provide references with particularity to those portions of the record upon which she relies in order to establish a fact in dispute. D.N.M. LR-Civ 56.1(b).

It is disputed whether Macaw viewed pornography on a website while at work although it is undisputed that she pulled up a website called www.rotten.com. It is undisputed that Macaw told co-workers that she authored sexually explicit erotic stories but she disputes that she planned on submitting the stories to publications like Playboy or Penthouse. It is uncontested that Macaw brought the stories to work and permitted her co-workers to read them. [Defendant's Material Fact 27; Plaintiff's Material Fact 27.]

Macaw admits having a discussion on one occasion with a co-worker about her supervisor's "butt." She denies telling co-worker Perry Williams that she caught another employee "jacking-off" in the switch gear room. [Defendant's Material Facts 28, 29; Plaintiff's Material Fact 18, 19.]

6

It is undisputed that Macaw showed a tank-top/sports bra, while she had it on, to her supervisor Steve Clark and asked him if it was all right to wear it to work.  She disagrees with Navajo's characterization of the clothing as a "bra."  [Defendant's Material Fact 30; Plaintiff's Material Fact 20.]

Navajo assumes the following facts to be true for purposes of its motion for summary judgment but disputes that the events actually occurred.  Macaw asserts that she found objectively offensive objects, pictures and cartoons on her locker, that her co-workers engaged in objectively offensive behavior, language and sexual innuendo, that Defendant Salazar licked her neck and propositioned her, that Ironmonger threatened her life (which appears to be undisputed by Ironmonger although he claims the threat to pay someone else $50,000 to have Macaw killed was a joke), and that co-workers brought Maxim magazines and lingerie catalogs to work.  Macaw claims that these actions were unwelcome and subjectively offensive.  [Defendant's Material Facts 31-35; Plaintiff's Material Fact 21.]

Again for purposes of this motion, Navajo assumes that the following facts are true but does not agree that the incidents actually occurred.  Macaw claims that employees at Navajo placed a condom on Macaw's car that her daughter found.  She further asserts that co-workers hung a condom from her locker that was filled with liquid to resemble sperm, and that a co-worker saw the condom.  Macaw alleges that co-workers posted a picture of a girl who looked like Pippy Long Stocking on her locker, that pages of a book she borrowed and brought to work were ripped out, that the ripped out pages were later stuffed into her locker, that co-workers stole her boots, coveralls, and ripped a hole in the sleeve of her jacket.

Macaw further asserts she complained of harassing behavior to supervisor Frank Guinan but that when she complained to him, he would "blow up, spit on you, and yell."  On another occasion, Macaw contends that she spoke to another supervisor, Virgil, who defined the actions of which Macaw complained as "just horseplay."  According to Macaw, Virgil then reprimanded her for not following the chain of command by talking to Guinan first.  Macaw alleges that she repeatedly requested management and co-workers to stop their outrageous and offensive conduct.  Macaw also claims she was sexually harassed by a co-worker who repeatedly tried to get her to go out behind the "smoker" or "parking lot" to "have a good time" and who commented on her long legs.  She told her supervisor Casey Terry about this incident who allegedly laughed at her.  [Plaintiff's Additional Material Facts 1-15; Defendant's Reply at p. 3.]

It is undisputed by the parties that many of the employees at Navajo joked around with each other and played practical jokes and pranks.  Sex was discussed among male and female employees to some degree.  [Defendant's Material Facts 36-38; Plaintiff's Material Fact 22.]

### B.      Pertinent Law as to Sexual Harassment/Hostile Work Environment Claims

A plaintiff may prove a violation of Title VII by establishing that discrimination based on sex created a hostile or abusive work environment.  Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986).  The United States Supreme Court held that a claim of "hostile work environment" sex discrimination is actionable under Title VII . . . ."  Id. at 73.

> "Hostile work environment harassment occurs where [sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." . . . "Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances."  "The plaintiff must demonstrate that the offending

> conduct was unwelcome; however, 'the question whether particular
> conduct was indeed unwelcome presents difficult problems of proof
> and turns largely on credibility determinations committed to the trier
> of fact.'"

Sauers v. Salt Lake County, 1 F.3d 1122, 1125-26 (10th Cir. 1993) (internal citations omitted).

For a hostile work environment sexual harassment claim to survive summary judgment, the plaintiff must establish that a rational jury "could find the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."   She must also produce evidence that she was the object of the harassment because of her gender.   However, conduct that is overtly sexual may be presumed to be based on the victim's gender.   Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998) (internal citations omitted), cert. denied, 526 U.S. 1039 (1999).   "Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances . . . includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc. 510 U.S. 17, 23 (1993).   In addition, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."   Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998).

Title VII does not, however, provide redress for a working environment that is "merely tinged with offensive sexual connotations." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).   The court must filter "out complaints attacking the ordinary tribulations of the workplace,

such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher, 524 U.S. at 788.

Moreover, if the alleged sexual harassment behavior would not have occurred "but for the sex of the employee" the individual has not been the victim of sex discrimination.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1537 (10th Cir. 1995).   In other words, gender neutral abuse is insufficient.

**C.      A Genuine Issue of Material Fact Exists with respect to the Title VII Hostile Work Environment/Sexual Harassment Claim**

Navajo argues that it is entitled to summary judgment on the hostile work environment claim on four grounds:  (i) Macaw cannot show that she was subject to unwelcome sexual harassment since she allegedly participated in the same types of conduct of which she complains; (ii) the alleged sexual harassment was not based on sex; (iii) that the alleged harassment was not pervasive or severe due to the alleged isolated incidents of which Macaw complained; and/or (iv) Macaw did not avail herself of Navajo's existing and widely distributed sexual harassment policy.

**i.      Unwelcome Sexual Harassment**

Unwelcome conduct must be conduct that the plaintiff neither solicits nor invites, and the plaintiff must regard the conduct at issue as undesirable or offensive.  *See* Meritor, 477 U.S. at 68. "The proper inquiry is whether the plaintiff indicated by [her] conduct that the alleged harassment was unwelcome." Quick v. Donaldson Co., 90 F.3d 1372, 1378 (8th Cir. 1996) (citing Meritor, 477 U.S. at 68).  This court recognizes that the "[t]he gravamen of any sexual harassment claim" is whether the conduct at issue is unwelcome.  Meritor, 477 U.S. at 68.  However, this inquiry often presents a fact question for the jury that largely turns on credibility determinations.  "[T]he question whether

particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact."  Id.

Macaw's concessions that she spoke of her sex life at work and brought in stories with sexual content that she permitted male co-workers to read make it a very close call whether Macaw may have solicited or invited some of the conduct of which she complains.[4]  Indeed, this court seriously questions the strength of Macaw's hostile work environment claim based on her admissions.

Nonetheless, in viewing the evidence in the light most favorable to Macaw as the court must, the court concludes that Macaw has raised genuine issues of material fact for the jury.  This is true, in part, because neither party provides any dates or chronology of events.  For example, it is unknown whether Macaw's own admitted conduct preceded any or all of the alleged incidents of which she complains, *e.g.,* the placement of the condom filled with some type of liquid on her locker at work, the placement of a condom on her car, Salazar's licking her neck, a co-worker possibly propositioning Macaw to go into the parking lot with him, posting offensive pictures and pornography, and the use of lewd sexual comments by co-workers.

Moreover, while Macaw admittedly engaged in offensive conduct in the workplace, she has alleged a number of incidents that she claims were unwelcome and that caused her emotional distress. She alleges that she made several complaints to supervisors about co-worker conduct.   In addition, in her EEOC charge (Ex. 3 to Loyd Aff.), she claims she submitted her resignation because of the alleged harassment directed at her, which is evidence that she subjectively viewed the alleged conduct as offensive. Here, the Court concludes that Macaw's allegations of alleged harassment and assertion

---

[4]In fact, based on Navajo's allegations, several male co-workers complained of Macaw's alleged inappropriate conduct in the workplace.

that male co-workers' conduct was unwelcome, while weak, are sufficient to raise a genuine issue of material fact for a jury to decide. This is particularly true in view of the problems of proof and credibility determinations that are essential to the inquiry of whether conduct is unwelcome.

### ii.   *Conduct Based on Sex*

In order to satisfy her *prima facie* case of hostile work environment/sexual harassment, Macaw must prove that the alleged offending conduct was based on her sex. In this case, Macaw makes a number of allegations regarding gender neutral conduct that do not support her Title VII claim. Indeed, the work environment apparently was riddled with gender neutral pranks and jokes played by co-workers on each other. However, some of the allegations by Macaw do appear to be based on sex. For example, hanging a condom on her locker filled with liquid and being licked on the neck by a male co-worker are construed as being based on sex. There are no allegations or evidence that condoms appeared on males' lockers or that male co-workers licked each other on the neck. Moreover, conduct (particularly the allegations regarding condoms) that is overtly sexual may be presumed to be motivated by one's gender. Penry, 155 F.3d at 1261. Similarly, evidence that co-workers purportedly placed a condom on Macaw's car could be interpreted as being based on sex. In addition, Macaw alleged that she was propositioned by a male co-worker to go out into the parking lot with him.[5] "[I]t is reasonable to assume [explicit or implicit proposals of sexual activity] would not have been made to someone of the same sex." Oncale, 523 U.S. 75.

---

[5]While Defendant Ironmonger's admitted threat to have someone kill Macaw for $50,000 may not have been based on Macaw's sex, in viewing the evidence in the light most favorable to Plaintiff and in examining the totality of circumstances, this threat also could have been related to gender, depending on the circumstances that surrounded the threat and the work environment.

In sum, the court finds that the question of whether Macaw was treated as she was "on account of sex" is a question of fact for the jury to decide.

### iii. *Pervasive and Severe Harassment*

Although Navajo's summary judgment brief did not set forth a separate argument that Macaw's complaints of harassment were too sporadic or isolated to constitute pervasive and severe harassment, in its reply, Navajo repeatedly contends that Macaw complained of only sporadic incidents spread out over a six year period. For example, in its reply, Navajo argues that Macaw alleged only three incidents that occurred over a six-year period. Unfortunately, neither party sufficiently briefed this issue by providing dates of specific incidents. Moreover, Navajo did not emphasize this argument sufficiently in its opening brief so that Macaw had the opportunity to dispute it, if she could.

The Tenth Circuit Court of Appeals observed that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is 'quintessentially a question of fact.'" O'Shea v. Yellow Tech. Services, Inc., 185 F.3d 1093, 1098 (10th Cir. 1999). The court concludes that a genuine issue of material fact remains as to whether the alleged harassment was severe and pervasive, and that the question should be presented to a jury.

### iv. *Affirmative Defense to Liability*

Navajo also claims that the hostile work environment claim must fail because it has an affirmative defense to liability. However, the court concludes that it is disputed whether the two individual defendants of whom Macaw claims were supervisors actually did supervise her at any pertinent time and whether Macaw adequately or reasonably took advantage of Navajo's sexual harassment policy by complaining of the allegedly offensive conduct to the proper supervisors or

13

managers. Macaw has alleged that she spoke to three supervisors about her complaints, one of whom would "blow up, spit on you and yell," the other who responded that the actions of which Macaw complained were just horseplay, and the third supervisor who responded by laughing at her. Macaw also alleges that she repeatedly requested management and her co-workers to stop their offensive behavior.

The court concludes that genuine issues of fact remain as to the issue of whether Navajo is entitled to an affirmative defense to liability as to the Title VII claim. Thus, the Title VII hostile work environment/sexual harassment claim will proceed to trial.

## II.   NEW MEXICO HUMAN RIGHTS ACT SEXUAL HARASSMENT CLAIM

Navajo claims that the NMHRA claims of hostile work environment/sexual harassment must be dismissed because Macaw failed to timely file her lawsuit in court. It is undisputed that on April 20, 2002, Macaw filed her EEOC/NMHRD charge. On April 28, 2003, the NMHRD issued an order of non-determination as to the hostile work environment claim and advised her in writing that she had thirty days in which to appeal this finding in district court. Macaw did not file this action until July 22, 2003, which is well beyond the 30-day limit. NMSA 1978 § 28-1-13(A). The fact that Macaw received a notice of right to sue from the EEOC that provided a different deadline for filing a court action does not affect the 30-day deadline for filing an appeal from an order of the NMHRD. Mitchell-Carr v. McLendon, 127 N.M. 282, 287-88 (1999). Thus, the NMHRA claim against Navajo of hostile work environment/sexual harassment must be dismissed, without prejudice.[6]

---

[6]Macaw's response brief did not present any opposition to or discussion of the untimeliness of her NMHRA court filing.

III.   **NEGLIGENT RETENTION CLAIM**

Macaw alleges that Navajo knew or should have known that harm would be caused by retaining individual defendants Ironmonger and Salazar as employees and that Navajo was negligent in retaining them.  Navajo did not move for summary judgment on this claim.  Thus, it will proceed to trial.

IV.   **TITLE VII RETALIATION CLAIM**

Macaw brings retaliation claims against Navajo under both Title VII and the NMHRA  The court considers the Title VII retaliation claim first.  In her Complaint, Macaw alleges that by filing charges of discrimination/retaliation with the NMHRD and the EEOC, she was involved in protected activity.  [Doc. No. 1, ¶ 51.]  As a result of her filings, she contends that Navajo took adverse actions against her by holding her to a different standard than other employees and by lowering her wages. [Doc. No. 1., ¶¶ 52, 53.]

     A.   *Material Facts Regarding Retaliation Claim*

In response to Navajo's interrogatory that requested the basis for Macaw's retaliation claim, she answered that after filing her EEOC charge, she had to go through training upon returning to her job.  She claims she was disciplined for driving her vehicle into the plant when other co-workers were not treated the same.  She asserts that Jeff Youtsey filed a sexual harassment claim against her, and that the entire work environment worsened, that co-workers and management treated her differently than before her charge and that the sexual comments worsened and were more frequent.  She also answered that her son Dakota ran away from home at one point and when she arrived to work, there was a picture of the "Where's Waldo?" type on the computer desktop, with the words "Where's Dakota?"  [Ex. I to Navajo's brief in support of summary judgment.]

Macaw also contends that she experienced a lowering of wages and a change in position in retaliation for protected activities.

### B.      *Pertinent Law as to Retaliation Claim*

In order to establish a *prima facie* case of Title VII retaliation, Macaw must prove: (1) she was engaged in protected opposition to Title VII discrimination; (2) she was subjected to an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action.  Sanchez v. Denver Pub. Schs., 164 F.3d 527, 533 (10th Cir. 1998); *see generally* 42 U.S.C. § 2000e-3(a) (prohibits retaliation when employee opposes any practice made an unlawful employment practice by this subchapter or because the employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter).

Where there is no direct evidence of retaliation, the court analyzes the claim under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Accordingly, Macaw must first present a *prima facie* case of retaliation.  Then the burden shifts to Navajo to produce a legitimate, non-retaliatory reason for taking the disputed employment action.  Annett v. University of Kansas, 371 F.3d 1233, 1237 (10th Cir. 2004).  If Navajo satisfies its burden, the burden returns to Macaw to provide evidence showing that the articulated reason(s) for the employment actions at issue are unworthy of belief or a pretext for retaliation.  Id.

### i.      *Protected Activity*

Here, it is undisputed that Macaw engaged in a protected activity by filing a charge of discrimination/retaliation with the EEOC and HRD.  Macaw also asserts that she engaged in

protected activity by complaining to supervisors regarding alleged harassment and her claim for workers' compensation. [Reply, p. 22, n. 3.]

### ii.      _Adverse Employment Action_

The next inquiry is whether Macaw has provided evidence that she was then subjected to an adverse employment action. "An adverse employment action constitutes 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. (internal citations omitted). The Tenth Circuit liberally defines the phrase "adverse employment action," and does not limit such actions to "monetary losses in the form of wages or benefits." Id. at 1239 (internal citation omitted). "In so defining the phrase, we consider acts that carry 'a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." Id. (internal citation omitted).

Macaw asserts that the adverse employment actions included verbal and physical harassment of Macaw, lowering of wages, change in position, verbal reprimands, and other employees fabricating complaints about her. She also alleges that conduct by Ironmonger (death threat) and Salazar (licking incident), along with placement of condoms on her locker and car were adverse employment actions.

Macaw's strongest evidence of an adverse employment action would have been the reduction of wages and change in position. However, Navajo provides undisputed affidavit evidence that the company reduced her pay and transferred her to another position in her unit on July 16, 2001, nearly one year before Macaw filed her first EEOC charge on April 20, 2002. Because retaliation must occur subsequent to or contemporaneously with the protected activity, the lowering of wages and

17

transfer do not amount to adverse employment actions in this case. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999).

The same is true regarding Jeff Youtsey's complaint to the company about Macaw's conduct. Even if such a complaint could be considered an adverse employment action, which is doubtful under the circumstances, it is undisputed that Youtsey's complaint was made more than two years before Macaw filed her EEOC charge. Thus, it too cannot be considered an adverse employment action for purposes of the retaliation claim.

Macaw also claims that a verbal reprimand she received constituted an adverse employment action. The Court disagrees, even if Macaw were able to show the reprimand occurred after she filed her administrative charges of retaliation, evidence which she did not provide. In any event, verbal reprimands alone simply do not amount to the "significant" types of changes in employment that the courts consider adverse employment actions. Even under the Tenth Circuit's liberal definition of the phrase, this court cannot conclude that a verbal reprimand that is not documented in Macaw's file and that does not result in any other type of disciplinary action can constitute an adverse employment action. See Oest v. Ill. Dep't of Corr., 240 F.3d 605, 613 (7th Cir. 2001) (holding that oral and written reprimands were not adverse employment actions absent evidence of any immediate consequence of the reprimands, like ineligibility for promotions or more favorable job transfers); Weeks v. New York State (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001) (holding that a notice of discipline and a counseling memo did not constitute adverse employment actions where employee did not allege any facts showing a materially adverse change in her working conditions), rev'd on other grounds, 2002 WL 31004726 (2d Cir. 2002).

18

Macaw further complains that the sexual harassment and offensive behavior of co-workers intensified after she filed her EEOC charge.  Yet, Macaw provides no dates of any specific incidents of alleged harassment that would enable the court to make an assessment of whether such alleged conduct amounted to an adverse employment action.  Thus, Macaw fails to satisfy her burden of proof in demonstrating a *prima facie* case of retaliation.  Andrews v. University of Kansas, 166 F.3d 346 (10th Cir. 1998) (conclusory allegations of retaliation insufficient to defeat summary judgment); Cuenca v. University of Kansas, 265 F. Supp. 2d 1191 (D. Kan. 2003) (where plaintiff presents no evidence of adverse action apart from his own conclusory allegations, summary judgment is appropriate), *aff'd*, 2004 WL 1328676 (10th Cir. 2004).  *See also* Scusa v. Nestle U.S.A. Company, Inc., 181 F.3d 958, 969 (8th Cir. 1999) (collecting cases where courts have held that certain conduct, like ostracism and shunning by co-workers and supervisors did not amount to adverse employment actions where there were no serious employment consequences that adversely affected or undermined the employee's position).

The same is true for Macaw's conclusory allegations that she was retaliated against after she complained to supervisors about alleged harassment or workers' compensation issues.  She provides no dates and no evidence as to when she was allegedly retaliated against or when she made the complaints.

Having failed to prove that she suffered an adverse employment action in relation to a protected activity, Macaw cannot satisfy the required elements of her *prima facie* case of Title VII retaliation.

iii.     ***Causal Connection***

Even if Macaw could show an adverse employment action, she cannot establish a causal connection between the protected activity and the purported adverse action.  Macaw produces no evidence of temporal proximity of the alleged adverse actions to her protected conduct.  Even if Macaw could show temporal proximity, the Tenth Circuit has held that "unless the [adverse action] is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation."  Meiners v. University of Kansas, 359 F.3d 1222, 1231 (10th Cir. 2004).  Here, Macaw provides no evidence of temporal proximity and no additional evidence that might demonstrate the required causal connection.

Because Macaw has failed to satisfy her burden in proving her *prima facie* case of Title VII retaliation, the Court need not proceed to Navajo's arguments regarding its legitimate business reasons for giving Macaw a verbal reprimand.   Accordingly, the Title VII retaliation claim will be dismissed, with prejudice.

## V.     NMHRA RETALIATION CLAIM

Macaw filed two separate charges of discrimination with the NMHRD.  The first charge of discrimination was filed on about April 20, 2002.   In this charge, Macaw alleged sex discrimination/harassment and retaliation.  In response to this charge, Macaw received an Order of Non-Determination, dated April 28, 2003 and advised Macaw she had thirty days to file an appeal in district court.  Macaw did not do so.  Her lawsuit was not filed until July 22, 2003, which is well beyond the 30-day deadline.  Thus, the NMHRA retaliation claim that is the subject of Macaw's first administrative charge is dismissed.

Macaw filed a second administrative charge with the NMHRD on about February 14, 2003. In this charge, she alleged only retaliation and identified the latest date of the alleged retaliation as occurring on May 3, 2002, when she submitted her resignation from employment.  According to Navajo, it is undisputed that Macaw never received an order of non-determination from the NMHRD with respect to the second charge.

This retaliation claim will be dismissed on a number of grounds.  First, the February 14, 2003 charge was filed more than 180 days after the alleged constructive discharge.  "All complaints shall be filed with the division within one hundred eighty days after the alleged act was committed." NMSA 1978 § 28-1-10(A); Mitchell-Carr, 127 N.M. at 286.  In addition, Macaw must receive a determination from the NMHRD before filing a lawsuit in court.  *See* id. (receiving a notice of right to sue from the EEOC does not satisfy the state law requirement of obtaining an order from the NMHRD).  Thus, under both of these grounds, the NMHRA claim of retaliation will be dismissed.[7]

Alternatively, for the same reasons discussed above under the Title VII analysis of Macaw's retaliation claim, the Court would conclude that even on the merits the retaliation claim is deficient and subject to dismissal.

## Conclusion

For all of the above stated reasons, Defendant Navajo's Motion for Partial Summary Judgment will be granted in part and denied in part.  The result is that the Title VII hostile work environment/sexual harassment claim against Navajo will proceed to trial, as well as the negligent retention claim.  All other claims against Navajo will be dismissed with prejudice.  As set forth in the

---

[7]Again, Plaintiff provided no argument as to whether she believed her court action was timely filed with respect to the NMHRA claims.

separate Memorandum Opinion and Order resolving the individual defendants' motions for summary judgment, the intentional infliction of emotional distress claim against Ironmonger (Count V) will proceed to trial, along with the assault and battery claim against Salazar (Count IV).

IT IS THEREFORE ORDERED that:

(1)     Defendant Navajo Refining Company, L.P.'s Motion for Partial Summary Judgment, [Doc. No. 60.] is GRANTED IN PART, and DENIED IN PART, with the result that

(2)     the New Mexico Human Rights Act sexual harassment and retaliation claims against Navajo (Counts I and VI) are dismissed, with prejudice;

(3)     the Title VII hostile work environment/sexual harassment claim against Navajo (Count II) will proceed to trial;

(4)     the Title VII retaliation claim against Navajo (Count VI) is dismissed with prejudice; and

(5)     the negligent retention claim against Navajo (Count III) will proceed to trial.


_____
      Richard L. Puglisi
United States Magistrate Judge
   (sitting by designation)

22